FILED

7 APR 2021

CLERK
U.S. DISTRICT COURT
MIDDLE DIST. OF ALA.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

UNITED STATES OF AMERICA          )
                                  )
v.                                )     CR. NO. 2:21cr185-MHT-SRW
                                  )     [18 U.S.C. § 1344(2);
ZSA ZSA BOUVIER COUCH             )     18 U.S.C. § 1014
                                  )     18 U.S.C. § 1957(a)
                                  )     18 U.S.C. § 2]
                                  )
                                  )     INDICTMENT

The Grand Jury charges:

## BACKGROUND

At all times relevant to this indictment:

1.      At all times material to the indictment, Defendant ZSA ZSA BOUVIER COUCH

was a resident of Montgomery County, Alabama.

### A. Overview of the Paycheck Protection Program

2.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal

law enacted in or about March 2020 and was designed to provide emergency financial assistance

to the millions of Americans who are suffering the economic effects caused by the COVID-19

pandemic.  One source of relief that the CARES Act provided for was the authorization of up to

$349 billion in forgivable loans to small businesses for payroll, mortgage interest, rent/lease, and

utilities, through a program referred to as the Paycheck Protection Program ("PPP").

3.      In order to obtain a PPP loan, a qualifying business was required to submit a PPP

loan application to a participating lender.  An authorized representative of the business was

required to sign an application.  In the PPP loan application, the small business (through its

authorized representative) had to state, among other things, its (a) average monthly payroll

expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. The amount of a PPP loan that a small business may be entitled to receive was determined by the number of persons employed by the business and the business's average monthly payroll costs. In general, the more employees a business had and the higher its average monthly payroll cost, the larger a PPP loan the business was eligible to receive. In addition, businesses applying for a PPP loan were required to provide documentation establishing their payroll expenses.

4.      The PPP loan application also required a business (through its authorized representative) to acknowledge its understanding of the program rules and make certain affirmative certifications. Businesses were required to use PPP loan proceeds for payroll costs, interest on mortgages, rent, and utilities. Specifically, in submitting the loan applications, the business (through its authorized representative) was required to certify, among others, each of the following representations:

- The Applicant business was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Internal Revenue Service ("IRS") Form(s) 1099-MISC;

- The funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule;

- During the period beginning February 15, 2020 and ending on December 31, 2020, the Applicant business had not and would not receive another loan under the PPP;

- The information provided in the application and the information provided in all supporting documents and forms was true and accurate in all material respects.

5.      The United States Small Business Administration ("SBA") oversaw the PPP. However, individual PPP loans were issued by private, SBA-approved lenders who received and processed PPP applications and supporting documentation, and then made loans using the lenders'

own funds.  PPP loans were 100% guaranteed by the SBA.  Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan.

### B. Relevant Financial Institutions

6.      At all times material to the indictment, Regions Bank ("Regions") was a Federal Deposit Insurance Corporation ("FDIC") insured financial institution headquartered in Birmingham, Alabama.  Regions participated in the SBA's PPP as a lender, and as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

7.      At all times material to the indictment, Trustmark National Bank ("Trustmark") was an FDIC insured financial institution headquartered in Jackson, Mississippi.  Trustmark participated in the SBA's PPP as a lender, and as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

### C. Entities Associated With The Defendant

8.      From on or about March 26, 2008 and continuing until the present, Trinity Christian Ministry, LLC (hereinafter "Trinity") was a limited liability company ("LLC") registered with the Alabama Secretary of State. At all times material to the indictment, COUCH was the registered agent of Trinity.

9.      From on or about June 12, 2007 and continuing until the present, Kidz Academy Christian Child Care Center, Inc. (hereinafter "Kidz Academy") was a non-profit corporation registered with the Alabama Secretary of State. At all times material to the indictment, COUCH was the registered agent and incorporator of Kidz Academy.

10.     From on or about January 22, 2008 and continuing until the present, Bouvier Hair Boutique LLC (hereinafter "Bouvier Hair") was a LLC registered with the Alabama Secretary of

State. At all times material to the indictment, COUCH was the registered agent of Bouvier Hair.

11.    From on or about April 7, 2020 and continuing until the present, Slim Fit Weight Loss Medical Clinic & Spa I Inc. (hereinafter "Slim Fit") was a domestic corporation registered with the Alabama Secretary of State. At all times material to the indictment, COUCH was the registered agent of Slim Fit.

12.    On or about May 2, 2020, COUCH filed a name reservation for Zsa Zsa's Boutique LLC (hereinafter "Zsa Zsa's Boutique") with the Alabama Secretary of State.

13.    At all times material to the indictment, COUCH was associated with each of the entities listed in paragraphs 8-12 (collectively, the "Couch entities").

**D. Bank Accounts Affiliated with the Couch Entities**

14.    On or about June 25, 2019, Individual 1 opened a checking account ending in 4021 at Regions for Kidz Academy ("Kidz Academy Regions 4021 account"). On or about July 8, 2019, COUCH was added as an authorized signer on the account.

15.    On or about May 7, 2020, Couch and Individual 1 opened a checking account ending in 2391 at Regions for Bouvier Hair ("Bouvier Hair Regions 2391 account").

16.    On or about April 22, 2020, Couch opened a checking account ending in 5460 at Trustmark for Slim Fit ("Slim Fit Trustmark 5460 account").

17.    On or about May 6, 2020, Couch and Individual 1 opened another checking for Kidz Academy, this time at Trustmark, with an account number ending in 5643 ("Kidz Academy Trustmark 5643 account").

## COUNTS 1-5
### (Bank Fraud)

18.    The factual allegations contained in the preceding paragraphs of this indictment are realleged and incorporated herein as if copied verbatim.

19.     On or about the dates set forth below, in Montgomery County, within the Middle District of Alabama, and elsewhere, the defendant,

ZSA ZSA BOUVIER COUCH,

did knowingly execute a scheme and artifice to defraud financial institutions, the deposits of which were insured by the Federal Deposit Insurance Corporation, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of the financial institutions, and caused the financial institutions to deposit funds into an account controlled by the defendant.

**MANNER AND MEANS**

**A.  Paycheck Protection Program Applications Filed**

20.     On or about the dates listed below, COUCH submitted to financial institutions PPP loan applications for the Couch entities as listed below.

***i.  PPP Loan Application #1: Slim Fit***

21.     On or about April 22, 2020, COUCH submitted to Trustmark a PPP loan application for Slim Fit.  In the application, COUCH claimed that Slim Fit had 10 employees and had an average monthly payroll of $82,416.67.  In submitting the application, COUCH sought PPP funding from Trustmark in the amount of $206,041.68.

22.     COUCH falsely and fraudulently inflated the number of employees and average monthly payroll for Slim Fit on the application.  COUCH made these knowing false statements on the Slim Fit application in order to qualify for more PPP funds.

23.     On the Slim Fit application, COUCH electronically signed next to each of the following certifications:

a.   Slim Fit "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC";

b.   "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments… [and] if the funds are knowingly used for unauthorized purposes, the federal government may hold [applicant] liable, such as for charges of fraud";

c.   "[T]he information provided in the application and the information provided in all supporting documents and forms is true and accurate in all material respects."

24.   Despite making these certifications, COUCH knew that Slim Fit did not have employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, as claimed on the application.

25.   COUCH falsely and fraudulently represented that the funds she sought in the Slim Fit application would "be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments" when, in fact, she intended to divert the funds she obtained from the PPP to her personal use and benefit.

26.   In addition, on the application, COUCH falsely answered "No," to the question "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?"

27.   COUCH electronically signed the Slim Fit application.

28.   In connection with the Slim Fit application, on or about April 22, 2020, COUCH electronically signed a document entitled "Paycheck Protection Program (PPP) Information Sheet:

Borrowers." Specifically, the document stated, "You acknowledge that the lender will calculate the eligible loan amount using the tax documents you submitted. You affirm that the tax documents are identical to those you submitted to the IRS."

29.     Despite the affirmation, COUCH included with the Slim Fit application IRS Form 941s (Employer's Quarterly Federal Tax Return) for Slim Fit that contained inflated employee and payroll information in order to support the number of employees and average monthly payroll claimed in the PPP application.

30.     At the time the Slim Fit application was filed, the Form 941s that COUCH submitted with the Slim Fit application had not been filed with the IRS.

31.     At the time the Slim Fit application was filed, the Alabama Department of Labor ("ADOL") did not have any employment records for Slim Fit.

32.     On or about June 3, 2020, Trustmark approved the Slim Fit application in the amount of $248,125.00.

### ii.     *PPP Loan Application #2: Trinity*

33.     On or about April 23, 2020, COUCH submitted a PPP loan application to Trustmark for Trinity. In the application, COUCH claimed that Trinity had 10 employees and had an average monthly payroll of $48,991.67. In submitting the application, COUCH sought PPP funding in the amount of $122,479.18.

34.     COUCH falsely and fraudulently inflated the number of employees and average monthly payroll for Trinity on the application. COUCH made these knowing false statements on the Trinity application in order to qualify for more PPP funds.

35.     On the Trinity application, COUCH electronically initialed next to each of the following certifications:

a. Trinity "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC";

b. "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments... [and] if the funds are knowingly used for unauthorized purposes, the federal government may hold [applicant] liable, such as for charges of fraud";

c. "[T]he information provided in the application and the information provided in all supporting documents and forms is true and accurate in all material respects."

36. Despite making these certifications, COUCH knew that Trinity did not have employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, as claimed on the application.

37. COUCH falsely and fraudulently represented that the funds she sought in the Trinity application would "be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments" when, in fact, she intended to divert the funds she obtained from the PPP to her personal use and benefit.

38. In addition, on the application, COUCH falsely answered "No," to the question "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?"

39. COUCH electronically signed the Trinity application.

40. In connection with the Trinity application, on or about April 23, 2020, COUCH electronically signed a document entitled "Paycheck Protection Program (PPP) Information Sheet:

Borrowers". Specifically, the document stated, "You acknowledge that the lender will calculate the eligible loan amount using the tax documents you submitted. You affirm that the tax documents are identical to those you submitted to the IRS."

41.      Despite the affirmation, COUCH included with the Trinity application IRS Form 941s for Trinity that contained inflated employee and payroll information in order to support the number of employees and average monthly payroll claimed in the PPP application.

42.      At the time the Trinity application was filed, the Form 941s that COUCH submitted with the Trinity application had not been filed with the IRS.

43.      At the time the Trinity application was filed, the ADOL did not have any employment records for Trinity.

44.      On or about May 4, 2020, Trustmark approved the Trinity application in the amount of $95,625.00.

### iii.      PPP Loan Application #3: Kidz Academy

45.      On or about April 23, 2020, COUCH submitted to Trustmark a PPP loan application for Kidz Academy.  In the application, COUCH claimed that Kidz Academy had 10 employees and had an average monthly payroll of $74,665.75.  In submitting the application, COUCH sought PPP funding in the amount of $186,664.38 from Trustmark.

46.      COUCH falsely and fraudulently inflated the number of employees and average monthly payroll for Kidz Academy on the application. COUCH made these knowing false statements on the Kidz Academy application in order to qualify for more PPP funds.

47.      On the Kidz Academy application, COUCH electronically initialed next to each of the following certifications:

a.      Kidz Academy "was in operation on February 15, 2020 and had employees

for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC";

b.    "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments… [and] if the funds are knowingly used for unauthorized purposes, the federal government may hold [applicant] liable, such as for charges of fraud";

c.    "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant business has not and will not receive another loan under the Paycheck Protection Program"; and

d.    "[T]he information provided in the application and the information provided in all supporting documents and forms is true and accurate in all material respects."

48.    Despite making these certifications, COUCH knew that Kidz Academy did not have employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, as claimed on the application.

49.    COUCH falsely and fraudulently represented that the funds she sought in the Kidz Academy application would "be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments" when, in fact, she intended to divert the funds she obtained from the PPP to her personal use and benefit.

50.    Furthermore, COUCH did not disclose that she had applied for another PPP loan for Kidz Academy at Regions.

51.    In addition, on the application, COUCH falsely answered "No," to the question "Is the Applicant or any owner of the Applicant an owner of any other business, or have common

management with, any other business?"

52.     COUCH electronically signed the Kidz Academy application.

53.     In connection with the Kidz Academy application, on or about April 23, 2020, COUCH electronically signed a document entitled "Paycheck Protection Program (PPP) Information Sheet: Borrowers," explaining the terms of the PPP. Specifically, the document stated, "You acknowledge that the lender will calculate the eligible loan amount using the tax documents you submitted. You affirm that the tax documents are identical to those you submitted to the IRS."

54.     Despite the affirmation, COUCH included with the Kidz Academy application IRS Form 941s for Kidz Academy that contained inflated employee and payroll information in order to support the number of employees and average monthly payroll claimed in the PPP application.

55.     At the time the Kidz Academy application was filed with Trustmark, the Form 941s that COUCH submitted with the Kids Academy application had not been filed with the IRS.

56.     At the time the Kidz Academy application was filed with Trustmark, the ADOL did not have any employment records for Kidz Academy.

57.     On or about May 11, 2020, Trustmark approved the Kidz Academy application in the amount of $83,437.47.

### iv.     *PPP Loan Application #4: Zsa Zsa's Boutique*

58.     On or about May 2, 2020, COUCH submitted a PPP loan application to Trustmark for Zsa Zsa's Boutique. In the application, COUCH claimed that Zsa Zsa's Boutique had 30 employees and had an average monthly payroll of $385,748.75. In submitting the application, COUCH sought PPP funding in the amount of $964,371.88 from Trustmark.

59.     COUCH falsely and fraudulently inflated the number of employees and average

monthly payroll for Zsa Zsa's Boutique on the application. COUCH made these knowing false statements on the Zsa Zsa's Boutique application in order to qualify for more PPP funds.

60.     On the Zsa Zsa's Boutique application, COUCH electronically initialed next to each of the following certifications:

a.     Zsa Zsa's Boutique "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC";

b.     "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments... [and] if the funds are knowingly used for unauthorized purposes, the federal government may hold [applicant] liable, such as for charges of fraud";

c.     "[T]he information provided in the application and the information provided in all supporting documents and forms is true and accurate in all material respects."

61.     Despite making these certifications, COUCH knew that Zsa Zsa's Boutique did not have employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, as claimed on the application.

62.     COUCH falsely and fraudulently represented that the funds she sought in the Zsa Zsa's Boutique application would "be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments" when, in fact, she intended to divert the funds she obtained from the PPP to her personal use and benefit.

63.     In addition, on the application, COUCH falsely answered "No," to the question "Is the Applicant or any owner of the Applicant an owner of any other business, or have common

management with, any other business?"

64. COUCH electronically signed the Zsa Zsa's Boutique application.

65. In connection with the Zsa Zsa's Boutique application, on or about May 2, 2020, COUCH electronically signed a document entitled "Paycheck Protection Program (PPP) Information Sheet: Borrowers," explaining the terms of the PPP. Specifically, the document stated, "You acknowledge that the lender will calculate the eligible loan amount using the tax documents you submitted. You affirm that the tax documents are identical to those you submitted to the IRS."

66. Despite this affirmation, COUCH included with the Zsa Zsa's Boutique application IRS Form 941s for Zsa Zsa's Boutique that contained inflated employee and payroll information in order to support the number of employees and average monthly payroll claimed in the PPP application.

67. At the time the Zsa Zsa's Boutique application was filed, the Form 941s that COUCH submitted with the Zsa Zsa's Boutique application had not been filed with the IRS.

68. At the time the Zsa Zsa's Boutique application was filed, the ADOL did not have any employment records for Zsa Zsa's Boutique.

69. On or about May 4, 2020, a Trustmark representative assigned to the Zsa Zsa's Boutique application requested that COUCH provide additional information. That same day, COUCH responded to "[j]ust withdraw application." The application was then fully cancelled.

### v.   *PPP Loan Application #5: Kidz Academy*

70. On or about May 5, 2020, COUCH submitted a PPP loan application to Regions for Kidz Academy. In the application, COUCH claimed that Kidz Academy had 15 employees and had an average monthly payroll of $120,000.00. In submitting the application, COUCH sought PPP funding in the amount of $66,700.00 from Regions.

13

71.     COUCH falsely and fraudulently inflated the number of employees and average monthly payroll for Kidz Academy on the application. COUCH made these knowing false statements on the Kidz Academy application in order to qualify for more PPP funds.

72.     On the Kidz Academy application, COUCH electronically initialed next to each of the following certifications:

      a.     Kidz Academy "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC";

      b.     "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments... [and] if the funds are knowingly used for unauthorized purposes, the federal government may hold [applicant] liable, such as for charges of fraud";

      c.     "During the period beginning on February 15, 2020 and ending on December 31, 2020, the Applicant business has not and will not receive another loan under the Paycheck Protection Program"; and

      d.     "[T]he information provided in the application and the information provided in all supporting documents and forms is true and accurate in all material respects."

73.     Despite making these certifications, COUCH knew that Kidz Academy did not have employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, as claimed on the application.

74.     COUCH falsely and fraudulently represented that the funds she sought in the Kidz Academy application would "be used to retain workers and maintain payroll or make mortgage

interest payments, lease payments, and utility payments" when, in fact, she intended to divert the funds she obtained from the PPP to her personal use and benefit.

75.     Moreover, COUCH did not disclose that she had filed another PPP application for Kidz Academy at Trustmark.

76.     In addition, on the application, COUCH falsely answered "No," to the question "Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business?"

77.     COUCH electronically signed the Kidz Academy application.

78.     COUCH included with the Kidz Academy application IRS Form 941s for Kidz Academy that contained inflated employee and payroll information in order to support the number of employees and average monthly payroll claimed in the PPP application.

79.     At the time the Kidz Academy application was filed with Regions, the Form 941s that COUCH submitted with the Kidz Academy application had not been filed with the IRS.

80.     At the time the Kidz Academy application was filed with Regions, the ADOL did not have any employment records for Kidz Academy.

81.     On or about May 5, 2020, Regions approved the Kidz Academy application and entered into a loan with COUCH for $66,700.00.

### vi.     *PPP Loan Application #6: Bouvier Hair*

82.     On or about June 3, 2020, COUCH submitted a PPP loan application to Regions for Bouvier Hair.  In the application, COUCH claimed that Bouvier Hair had 10 employees and had an average monthly payroll of $183,600.00.  In submitting the application, COUCH sought PPP funding in the amount of $115,800.00 from Regions.

83.     COUCH falsely and fraudulently inflated the number of employees and average

monthly payroll for Bouvier Hair on the application. COUCH made these knowing false statements on the Bouvier application in order to qualify for more PPP funds.

84.     On the Bouvier Hair application, COUCH electronically initialed next to each of the following certifications:

      a.    Bouvier Hair "was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC";

      b.    "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments... [and] if the funds are knowingly used for unauthorized purposes, the federal government may hold [applicant] liable, such as for charges of fraud";

      c.    "[T]he information provided in the application and the information provided in all supporting documents and forms is true and accurate in all material respects."

85.     Despite making these certifications, COUCH knew that Bouvier Hair did not have employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC, as claimed on the application.

86.     COUCH falsely and fraudulently represented that the funds she sought in the Bouvier Hair application would "be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments" when, in fact, she intended to divert the funds she obtained from the PPP to her personal use and benefit.

87.     In addition, on the application, COUCH falsely answered "No," to the question "Is the Applicant or any owner of the Applicant an owner of any other business, or have common

management with, any other business?"

88.     COUCH electronically signed the Bouvier Hair application.

89.     COUCH included with the Bouvier Hair application Form 941s for Bouvier Hair that contained inflated employee and payroll information in order to support the number of employees and average monthly payroll claimed in the PPP application.

90.     At the time the Bouvier Hair application was filed, the Form 941s that COUCH submitted with the Bouvier Hair application had not been filed with the IRS.

91.     At the time the Bouvier Hair application was filed, the ADOL did not have any employment records for Bouvier Hair.

92.     On or about June 3, 2020, Regions approved the Bouvier Hair application in the amount of $115,800.00.

**B. PPP Loan Disbursement**

93.     Based on the false and fraudulent representations COUCH made on the PPP loan applications, discussed above in Section A, the financial institutions that received these applications funded, at least in part, five of the six PPP applications.

94.     On or about May 7, 2020, Trustmark disbursed approximately $95,625.00 in proceeds of PPP loans was disbursed to Trinity.  Trustmark disbursed the funds through an electronic transfer to the Slim Fit Trustmark 5460 account.

95.     On or about May 7, 2020, approximately $66,700.00 in proceeds of PPP loans was disbursed by Regions to Kidz Academy into the Kidz Academy Regions 4021 account.

96.     On or about May 14, 2020, approximately $83,437.47 in proceeds of PPP loans was disbursed by Trustmark to Kidz Academy into the Kidz Academy Trustmark 5643 account.

97.     On or about June 4, 2020, approximately $115,800.00 in proceeds of PPP loans

was disbursed by Regions to Bouvier Hair into the Bouvier Hair Regions 2391 account.

98.     On or about June 8, 2020, approximately $248,125.00 in proceeds of PPP loans was disbursed by Trustmark to Slim Fit into the Slim Fit Trustmark 5460 account.

**C. Unauthorized Use of Proceeds of PPP Loans**

*i.  Use of Proceeds of PPP Loans from Slim Fit Trustmark 5460 Account*

99.     Trustmark deposited proceeds of PPP loans for Slim Fit and Trinity into the Slim Fit Trustmark 5460 account.

100.     After receiving the fraudulently obtained proceeds of PPP loans for Trinity into the Slim Fit Trustmark 5460 account, COUCH used the funds to purchase a vehicle. On or about May 13, 2020, a wire transfer was initiated from the Slim Fit Trustmark 5460 account for approximately $22,198.00 to an auto dealership, Rusnak Westlake Audi, to purchase a vehicle, specifically, a 2017 Audi Q3. On or about June 2, 2020, COUCH registered the Audi in her name and applied for a certificate of title to the Alabama Department of Revenue Motor Vehicle Division.

101.     Drawing from proceeds of PPP loans for Trinity and Slim Fit, between in or about May 2020 until in or about July 2020, approximately $150,000.00 in checks were written from the Slim Fit Trustmark 5460 account made payable to COUCH and COUCH's family members. The memo entry for all of the checks stated "Payroll," but they were not in fact for payroll.

*ii.     Use of Proceeds of PPP Loans from Kidz Academy Trustmark 5643 Account*

102.     Trustmark deposited proceeds of PPP loans for the Kidz Academy application submitted to Trustmark into the Kidz Academy Trustmark 5643 account.

103.     Drawing from proceeds of PPP loans for Kidz Academy, between in or about May 2020 until in or about July 2020, approximately $49,200 in checks were written from the Kidz

Academy Trustmark 5643 account made payable to COUCH and COUCH's family members. The memo entry for all of the checks stated "Payroll," but they were not in fact for payroll.

iii.    *Use of Proceeds of PPP Loans from Kidz Academy Regions 4021 Account*

104.    Regions deposited proceeds of PPP loans for the Kidz Academy application submitted to Regions into the Kidz Academy Regions 4021 account.

105.    Drawing from proceeds of PPP loans for Kidz Academy, between in or about May 2020 until in or about June 2020, checks totaling approximately $18,100 were written from the Kidz Academy Regions 4021 account made payable to COUCH and COUCH's family members. The memo entry for the checks stated "Payroll" or were left blank. None of the checks were in fact for payroll.

iv.    *Use of Proceeds of PPP Loans from Bouvier Hair Regions 2391 Account*

106.    Regions deposited proceeds of PPP loans for the Bouvier Hair application submitted to Regions into the Bouvier Hair Regions 2391 account.

107.    Drawing from proceeds of PPP loans for Bouvier Hair, in or about June 2020, approximately $26,200 in checks were written from the Bouvier Hair Regions 2391 account made payable to COUCH and COUCH's family members. The memo entry for the checks stated "Payroll" or were left blank. None of the checks were in fact for payroll.

108.    In addition, COUCH used the fraudulently obtained proceeds of PPP funds intended for Bouvier Hair to purchase a vehicle.

a.    On or about June 17, 2020, COUCH authorized a withdrawal from Regions Bank account ending in 2391 in the amount of $27,007.00.

b.  On or about June 17, 2020, COUCH used the withdrawn funds to purchase a cashier's check in the amount of $26,997.00, payable to a family member of COUCH. The "Purchaser / Purchased For" line on the cashier's check reflected "Zsa Zsa Couch / Payroll".

c.  The cashier's check was then deposited back into Bouvier Hair Regions Bank 2391 account and endorsed "use for purpose not intended."

d.  On or about June 25, 2020, COUCH authorized a wire transfer in the amount of $26,997.00 from Regions Bank account ending in 2391 to beneficiary AN Texas Region Management, Ltd, Bank of America. The wire note stated "PURCHASE VEHICLE VIN# WDD3G4EBCKW017692."

e.  Specifically, COUCH used the funds to purchase a 2019 Mercedes-Benz A-220 with VIN# WDD3G4EBCKW017692. The vehicle was registered to a family member of COUCH.

## THE CHARGES

109.  The factual allegations contained in the preceding paragraphs of this indictment are realleged and incorporated herein as if copied verbatim.

110.  On or about the dates set forth below, in Montgomery County, within the Middle District of Alabama, and elsewhere, the defendant,

ZSA ZSA BOUVIER COUCH,

did knowingly execute a scheme and artifice to defraud financial institutions, the deposits of which were each insured by the Federal Deposit Insurance Corporation, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, moneys, funds, credits,

assets, securities, and other property owned by and under the custody and control of the financial institutions, and caused the following financial institutions to deposit the following funds into an account controlled by the defendant, each giving rise to a separate count:

| COUNT | DATE | AMOUNT DISBURSED | FINANCIAL INSTITUTION |
|-------|------|------------------|------------------------|
| 1 | May 7, 2020 | Deposited $95,625.00 into account ending in 5460 | Trustmark |
| 2 | May 7, 2020 | Deposited $66,700.00 into account ending in 4021 | Regions |
| 3 | May 14, 2020 | Deposited $83,437.47 into account ending in 5643 | Trustmark |
| 4 | June 4, 2020 | Deposited $115,800.00 into account ending in 2391 | Regions |
| 5 | June 8, 2020 | Deposited $248,125.00 into account ending in 5460 | Trustmark |

All in violation of Title 18, United States Code, Sections 1344(2) and 2.

## COUNT 6
(False Statement to a Federally Insured Bank)

111.    The factual allegations contained in the preceding paragraphs of this indictment are realleged and incorporated herein as if copied verbatim.

112.    On or about April 22, 2020, in Montgomery County, within the Middle District of Alabama, and elsewhere, the defendant,

ZSA ZSA BOUVIER COUCH,

knowingly made a false statement and report for the purpose of influencing the actions of Trustmark National Bank, whose deposits were insured by the Federal Deposit Insurance Corporation, in connection with a Paycheck Protection Program loan application, in that the defendant falsely represented and certified on her Paycheck Protection Program application for Slim Fit Weight Loss Medical Clinic and Spa I Inc. that (a) the funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments; and (b) the information provided in the application and supporting documents and forms

was true and accurate in all material respects, when in truth and in fact, as the defendant well knew,

(i) the funds would not be used to retain workers and maintain payroll or to make mortgage interest

payments, lease payments, and utility payments; and (ii) the information provided in the

application and supporting documents and forms was not true in all material respects, because it

included false representations about Slim Fit's number of employees and average monthly payroll,

and falsified tax documentation.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT 7
(False Statement to a Federally Insured Bank)

113.    The factual allegations contained in the preceding paragraphs of this indictment are

realleged and incorporated herein as if copied verbatim.

114.    On or about April 23, 2020, in Montgomery County, within the Middle District of

Alabama, and elsewhere, the defendant,

ZSA ZSA BOUVIER COUCH,

knowingly made a false statement and report for the purpose of influencing the actions of

Trustmark National Bank, whose deposits were insured by the Federal Deposit Insurance

Corporation, in connection with a Paycheck Protection Program loan application, in that the

defendant falsely represented and certified on her Paycheck Protection Program application for

Trinity Christian Ministry, LLC that (a) the funds would be used to retain workers and maintain

payroll or make mortgage interest payments, lease payments, and utility payments; and (b) the

information provided in the application and supporting documents and forms was true and accurate

in all material respects, when in truth and in fact, as the defendant well knew, (i) the funds would

not be used to retain workers and maintain payroll or to make mortgage interest payments, lease

payments, and utility payments; and (ii) the information provided in the application and supporting

documents and forms was not true in all material respects, because it included false representations

about Trinity Christian Ministry, LLC's number of employees and average monthly payroll, and

falsified tax documentation.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT 8
(False Statement to a Federally Insured Bank)

115.    The factual allegations contained in the preceding paragraphs of this indictment are

realleged and incorporated herein as if copied verbatim.

116.    On or about April 23, 2020, in Montgomery County, within the Middle District of

Alabama, and elsewhere, the defendant,

### ZSA ZSA BOUVIER COUCH,

knowingly made a false statement and report for the purpose of influencing the actions of

Trustmark National Bank, whose deposits were insured by the Federal Deposit Insurance

Corporation, in connection with a Paycheck Protection Program loan application, in that the

defendant falsely represented and certified on her Paycheck Protection Program application for

Kidz Academy Christian Child Care Center, Inc. that (a) the funds would be used to retain workers

and maintain payroll or make mortgage interest payments, lease payments, and utility payments;

and (b) the information provided in the application and supporting documents and forms was true

and accurate in all material respects, when in truth and in fact, as the defendant well knew, (i) the

funds would not be used to retain workers and maintain payroll or to make mortgage interest

payments, lease payments, and utility payments; and (ii) the information provided in the

application and supporting documents and forms was not true in all material respects, because it

included false representations about Kidz Academy Christian Child Care Center, Inc.'s number of

employees and average monthly payroll, and falsified tax documentation.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT 9
(False Statement to a Federally Insured Bank)

117.   The factual allegations contained in the preceding paragraphs of this indictment are realleged and incorporated herein as if copied verbatim.

118.   On or about May 2, 2020, in Montgomery County, within the Middle District of Alabama, and elsewhere, the defendant,

### ZSA ZSA BOUVIER COUCH,

knowingly made a false statement and report for the purpose of influencing the actions of Trustmark National Bank, whose deposits were insured by the Federal Deposit Insurance Corporation, in connection with a Paycheck Protection Program loan application, in that the defendant falsely represented and certified on her Paycheck Protection Program application for Zsa Zsa's Boutique LLC that (a) the funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments; and (b) the information provided in the application and supporting documents and forms was true and accurate in all material respects, when in truth and in fact, as the defendant well knew, (i) the funds would not be used to retain workers and maintain payroll or to make mortgage interest payments, lease payments, and utility payments; and (ii) the information provided in the application and supporting documents and forms was not true in all material respects, because it included false representations about Zsa Zsa's Boutique LLC's number of employees and average monthly payroll, and falsified tax documentation.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT 10
(False Statement to a Federally Insured Bank)

119.    The factual allegations contained in the preceding paragraphs of this indictment are realleged and incorporated herein as if copied verbatim.

120.    On or about May 5, 2020, in Montgomery County, within the Middle District of Alabama, and elsewhere, the defendant,

## ZSA ZSA BOUVIER COUCH,

knowingly made a false statement and report for the purpose of influencing the actions of Regions Bank, whose deposits were insured by the Federal Deposit Insurance Corporation, in connection with a Paycheck Protection Program loan application, in that the defendant falsely represented and certified on her Paycheck Protection Program application for Kidz Academy Christian Child Care Center, Inc. that (a) the funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments; (b) the information provided in the application and supporting documents and forms was true and accurate in all material respects; and (c) during the period beginning on February 15, 2020 and ending on December 31, 2020, the applicant has not and will not receive another loan under the Paycheck Protection Program, when in truth and in fact, as the defendant well knew, (i) the funds would not be used to retain workers and maintain payroll or to make mortgage interest payments, lease payments, and utility payments; (ii) the information provided in the application and supporting documents and forms was not true in all material respects because it included false representations about Kidz Academy Christian Child Care Center, Inc.'s number of employees and average monthly payroll, and falsified tax documentation; and (iii) the defendant had applied for another Paycheck Protection Program loan for Kidz Academy Christian Child Care Center, Inc. from another financial institution.

All in violation of Title 18, United States Code, Sections 1014 and 2.

## COUNT 11
(False Statement to a Federally Insured Bank)

25

121.    The factual allegations contained in the preceding paragraphs of this indictment are realleged and incorporated herein as if copied verbatim.

122.    On or about June 3, 2020, in Montgomery County, within the Middle District of Alabama, and elsewhere, the defendant,

ZSA ZSA BOUVIER COUCH,

knowingly made a false statement and report for the purpose of influencing the actions of Regions Bank, whose deposits were insured by the Federal Deposit Insurance Corporation, in connection with a Paycheck Protection Program loan application, in that the defendant falsely represented and certified on her Paycheck Protection Program application for Bouvier Hair Boutique LLC that (a) the funds would be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments; and (b) the information provided in the application and supporting documents and forms was true and accurate in all material respects, when in truth and in fact, as the defendant well knew, (i) the funds would not be used to retain workers and maintain payroll or to make mortgage interest payments, lease payments, and utility payments; and (ii) the information provided in the application and supporting documents and forms was not true in all material respects, because it included false representations about Bouvier Hair Boutique LLC's number of employees and average monthly payroll, and falsified tax documentation.

All in violation of Title 18, United States Code, Sections 1014 and 2.

### COUNT 12
(Money Laundering)

123.    The factual allegations contained in the preceding paragraphs of this indictment are realleged and incorporated herein as if copied verbatim.

124.    On or about May 13, 2020, in Montgomery County, within the Middle District of Alabama, and elsewhere, the defendant,

ZSA ZSA BOUVIER COUCH,

knowingly engaged in and attempted to engage in a monetary transaction, by, through, and to a financial institution, affecting interstate and foreign commerce, knowing that such transaction involved criminally derived property of a value greater than $10,000, to wit: in that the defendant caused $22,198.00 in Paycheck Protection Program loan proceeds to be wire transferred from Trustmark National Bank account ending in 5460, held in the name of Slim Fit Weight Loss Medical Clinic & Spa I Inc., to a bank account held in the name of Rusnak Westlake Audi to purchase a 2017 Audi Q3 vehicle, and that, while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction had been derived from a specific unlawful activity, to wit: bank fraud.

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

### COUNT 13
(Money Laundering)

125.    The factual allegations contained in the preceding paragraphs of this indictment are realleged and incorporated herein as if copied verbatim.

126.    On or about June 25, 2020, in Montgomery County, within the Middle District of Alabama, and elsewhere, the defendant,

ZSA ZSA BOUVIER COUCH,

knowingly engaged in and attempted to engage in a monetary transaction, by, through, and to a financial institution, affecting interstate and foreign commerce, knowing that such transaction involved criminally derived property of a value greater than $10,000, to wit: in that the defendant caused $26,997.00 in Paycheck Protection Program loan proceeds to be wire transferred from

Regions Bank account ending in 2391, held in the name of Bouvier Hair Boutique LLC, to a bank account held in the name of AN Texas Region Management to purchase a 2019 Mercedes-Benz A-220 vehicle bearing VIN: WDD3G4EBCKW017692, and that, while conducting and attempting to conduct such financial transaction, knew that the property involved in the financial transaction had been derived from a specific unlawful activity, to wit: bank fraud.

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

FORFEITURE ALLEGATION

A.      The allegations contained in Counts 1-13 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 982(a)(1) and (2).

B.      Upon conviction of the offenses in violation of Title 18, United States Code, Sections 1344, 1014, and 1957(a) set forth in Counts 1-13 of this Indictment, the defendant,

ZSA ZSA BOUVIER COUCH,

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(1) and (2), any property, real or personal, involved in such offense, or any property traceable to such property; and any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation. The property includes, but is not limited to:

1.      a 2019 BMW 330, bearing VIN: WBA5R7C52KAJ82032, with all appurtenances and attachments thereon;

2.      a 2007 General Motors Company, Pick-Up Truck bearing VIN: 3GTEC14X67G231789, with all appurtenances and attachments thereon;

3.      A 2019 Mercedes-Benz, A 220, 4-Door Sedan, bearing VIN: WDD3G4EB6KW017692, with all appurtenances and attachments thereon;

4.   A 2017 Audi, Q3, 4-Door SUV, bearing VIN: WA1JCCFS1HR01088, with all appurtenances and attachments thereon;

5.   2008 Ford Mustang, GT, bearing VIN: 1ZVHT82H485196449, with all appurtenances and attachments thereon;

6.   $23,100.84 in funds seized from bank account number XXX-XXX-5460 in the name of Slim Fit Weight Loss Medical Clinic and Spa I, Inc. at Trustmark National Bank, Jackson, Mississippi;

7.   $13,359.98 in funds seized from bank account number XXX-XXX-5643 in the name of Kidz Academy Christian Child Care Center, Inc. at Trustmark National Bank, Jackson, Mississippi;

8.   $37,209.26 in funds seized from bank account number XX4874 in the name of Zsa Zsa Bouvier Couch at Guardian Credit Union, Montgomery, Alabama;

9.   $16,482.50 in funds seized from bank account number XX4875 in the name of Jeffery Couch at Guardian Credit Union, Montgomery, Alabama;

10.  $6,000.00 in funds seized from bank account number XX1226 in the name of Jim Walters Jr. at Guardian Credit Union, Montgomery, Alabama;

11.  $20,042.47 in funds seized from bank account number XXXXXX4021 in the name of Kidz Academy Christian Child Care Center, Inc. at Regions Bank, Millbrook, Alabama;

12.  $987.30 in funds seized from bank account number XXXXXX2391 in the name of Bouvier Hair Boutique, LLC at Regions Bank, Millbrook, Alabama;

13.     $6,000.00 in funds seized from bank account number XXXX3307 in the name of Hattie Walters at Max Federal Credit Union, Montgomery, Alabama;

14.     $2,402.00 in United States Currency seized from the residence located at 9425 Alpine Park Court, Montgomery, Alabama;

15.     $1,180.00 in United States Currency seized from a purse located in the residence located at 9425 Alpine Park Court, Montgomery, Alabama; and

16.     $201.60 in funds seized from bank account number XXXX4021 in the name of Kidz Academy Christian Child Care Center, Inc. at Regions Bank, Millbrook, Alabama.

C.     If any of the property described in this forfeiture allegation, as a result of any act or omission of the defendant:

(1)     cannot be located upon the exercise of due diligence;

(2)     has been transferred or sold to, or deposited with, a third party;

(3)     has been placed beyond the jurisdiction of the court;

(4)     has been substantially diminished in value; or

(5)     has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All pursuant to Title 18, United States Code, Sections 982(a)(1) and (2).

A TRUE BILL:

Foreperson

SANDRA J. STEWART
ACTING UNITED STATES ATTORNEY

Alice S. LaCour
Assistant United States Attorney

Jonathan S. Ross
Assistant United States Attorney

Gregory O. Griffin, Jr.
Assistant United States Attorney

31